UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LORENZO BRELAND | CIVIL ACTION |
| VERSUS | NO. 15-2258 |
| ARENA FOOTBALL ONE, LLC., ET AL | SECTION "L" |

### ORDER & REASONS

Before the Court is a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant Federal Insurance Company. (R. Doc. 60). For the following reasons, the motion is hereby granted.

### I.  BACKGROUND

This case arises out of injuries allegedly sustained by Plaintiff Lorenzo Breland while he was employed as a professional arena football player. Jurisdiction of this Court is invoked under diversity. (R. Doc. 44 at 1). Plaintiff alleges misrepresentation, fraud, negligence, and breach of contract against Defendants, Arena Football One, L.L.C. ("AFO"), which owns Arena Football League One, LLC ("AFLO"), and Louisiana Arena Football, L.L.C. ("LAF"), which owns the New Orleans Voodoo franchise. Plaintiff has also filed claims against AFO's insurers, including National Casualty Company ("National") and Federal Insurance Company ("Federal"), averring that they provided a commercial general liability policy to AFO, AFLO, and LAF. (R. Doc. 53 at 3).[1]

---

[1] Plaintiff has filed various amended complaints. (R. Docs. 1, 29, 44, 53). The third amended complaint (R. Doc. 53) was filed to amend the second amended complaint (R. Doc. 44) to remove defendant Everest National Insurance Company and add National Casualty Company and Federal Insurance Company. All other allegations in the second amended complaint were adopted *in extenso*. Accordingly, this Order will rely on both the second and third amended complaints to determine Plaintiff's claims. Defendant AFO filed answers to each complaint. (R. Docs. 6, 31, 45, 56).

Plaintiff alleges he initially sustained a concussion while playing for the Tulsa Talons in 2011, which is also a part of the AFO league. (R. Doc. 44 at 12). After the team doctor diagnosed Plaintiff, he alleges the team encouraged him to return and he started the following game. *Id*. at 12. Subsequently, he played for the New Orleans Voodoo. Plaintiff alleges that he sustained a severe blow to the head during a game on April 11, 2014, which caused a second concussion. (R. Doc. 44 at 12). Plaintiff claims that, after the 2014 incident, he received inadequate medical attention and care and was pressured to return to playing football before he was fully rehabilitated. (R. Doc. 44 at 12). He avers that, after complaining to the coach about his continued health problems, he was sent to a speech pathologist. *Id*. Plaintiff alleges that this head injury caused him to remain bedridden for six weeks, and that he was ultimately suspended from the league and cut from the LAF team. (R. Doc. 44 at 12-13). Plaintiff avers the second concussion ended his career, and Defendants did not pay for his ongoing medical care or rehabilitation to allow him to return to play in a healthy manner. *Id*. at 13. Plaintiff states that he continues to suffer long-term problems, including dizziness, memory loss, headaches, weight loss, neck aches and fatigue, and that he faces an increased risk for future disorders as a result of the injuries. *Id*. at 13, 16.

Plaintiff seeks damages, past and future medical expenses related to the concussions, and medical monitoring to facilitate the diagnosis and treatment of future disorders caused by the injuries. (R. Doc. 29 at 17). Plaintiff asserts that AFO knew of the potential risks associated with head trauma but intentionally concealed them. (R. Doc. 44 at 13-14; 18). Further, AFO fostered an environment of brutality and violence and ignored the wellbeing of its players for the sake of profit. *Id*. at 14. Plaintiff further alleges that Defendants breached their duties by failing to take appropriate steps to prevent or mitigate the potential for injury, avoiding such steps due to the

expense and impact on league profitability. (R. Doc. 29 at 22). Plaintiff claims that Defendants falsely represented to him that he would receive excellent medical care, which they failed to provide. (R. Doc. 29 at 13). Plaintiff alleges that the league players' collective bargaining agreement created an obligation that the Defendants pay all medical expenses resulting from any injury sustained while playing in a game, but that Defendants have acted in bad faith and refused to pay any expenses incurred as a result of Plaintiff's second 2014 concussion. (R. Doc. 29 at 26).

Specifically, Plaintiff seeks (1) Declaratory Relief under 28 USC §2201 stating that Defendants knew or should have known about the long-term effects of trauma to the head that Plaintiff endured while playing for AFO, had a duty to advise Plaintiff of that risk but instead willfully and intentionally concealed the risk, and recklessly endangered Plaintiff; (2) an injunction for Court-supervised and Defendant-funded medical monitoring for long-term neurological affects as a result of Plaintiffs' minor traumatic brain injuries ("MTBI"), which was a result of Defendants' tortious conduct; (3) compensatory damages for past, current, and future medical care; (4) compensatory damages for pain and suffering; (5) punitive damages; (6) any other relief; (7) attorneys' fees; (8) and injunction and/or equitable relief against National and Federal, holding that the insurance policy provided coverage for Plaintiffs' injuries and claims and holding National and Federal in bad faith under La. R.S. §§22:1892 and 22:1973. (R. Doc. 44 at 14-28). Specifically to 8, Plaintiff seeks all forms of insurance penalties, bad faith damages, general damages, and attorneys' fees permitted under the aforementioned statutes if Federal or National decline coverage. (R. Doc. 53 at 3).

Plaintiff's original Complaint had stated that he was an employee of AFO and the New Orleans Voodoo, and that he was employed by AFO from 2010 to 2014. (R. Doc. 1 at 11-12).

Plaintiff added Defendant LAF to the suit after discovering that LAF owned the New Orleans Voodoo during the time period relevant to Plaintiff's injuries. (R. Doc. 16 at 1). Plaintiff submitted that he had mistakenly claimed in the Complaint that he was employed by AFO, when in fact he was never employed by AFO. (R. Doc. 16-1 at 2).

II.     **PRESENT MOTION**

Federal now moves to dismiss this case on the ground that Plaintiff failed to state a claim against Federal, because there is no coverage under a CGL policy, or any other insurance policy issued by Federal for Plaintiffs allegations of bodily injury and breach of contract against AFO. (R. Doc. 60-1 at 1). Plaintiffs filed an Opposition (R. Doc. 63) and, with leave of the Court, Federal filed a reply (R. Doc. 66).

### A. Motion to Dismiss Standard

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court must construe facts in the light most favorable to the nonmoving party. *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir. 2009). The court must accept as true all factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Dismissal is appropriate only if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation et al. v. William Twombly,* 550 U.S. 544, 570 (2007). A motion to dismiss under rule 12(b)(6) is "viewed with disfavor and is rarely

4

granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).

### B. The Commercial General Liability Policy

Federal argues that Plaintiff fails to state a claim against them because there is no applicable insurance policy issued by Federal under which Plaintiff can recover.[2] Federal avers that the policy period for the most recent CGL policy issued by Federal to AFO was March 7, 1999 to March 7, 2000. (R. Doc. 60-1 at 2). The CGL policy is an "occurrence-based policy which limits coverage to injuries that occurred within the policy period. *Id*. at 4. Plaintiffs' alleged injury occurred, at the earliest, in 2010 which is outside the policy period. *Id*. Accordingly, Federal avers that its CGL Policy does not cover Plaintiff's claims.

Plaintiff does not contest Federal's argument, and agrees that he cannot recover under the CGL Policy Issued by Federal. (R. Doc. 63 at 3). Accordingly this issue is Moot.

### C. The Directors and Officers Policy

In addition to the CGL Policy, Federal also issued a Directors and Officers liability policy ("D&O Policy"). (R. Doc. 60-1 at 2). The D&O Policy, however, contained express exclusions for bodily injury and breach of contract claims. *Id*. Because Plaintiff's employment status is in dispute, Federal also notes that the D&O Policy also bars coverage for Plaintiff to the extent he is found to be an employee of AFI and therefore an insured person under the D&O Policy. *Id*. at 4 n4. The D&O Policy bars coverage for allegations of "employment-related wrongful acts." *Id*.

Plaintiff avers his claims are proper under the D&O Policy because they were filed within the policy period on June 22, 2015, and his claims are properly covered under the policy. (R.

---

[2] Federal highlights that AFO has filed a cross-claim against the other insurer, National, seeking defense and indemnity, but did not do so against Federal. (R. Doc. 60-1 at 4 n.3)

5

Doc. 63 at 3). Plaintiff primarily argues that an exclusion for bodily injury claims in the D&O Policy is against public policy because it eliminates a large swath of possible causes of action against AFO given its purpose as a company. *Id*. at 4-5. Accordingly, he argues the contract should be void.

Further, Plaintiff argues Federal has a duty to defend claims brought against AFL. *Id*. at 5-9. He avers that, under Louisiana law, insurer's duty to defend is greater than its duty to indemnify. *Id*. at 5. Accordingly, under Fifth Circuit precedent, unless Plaintiffs' claims are clearly excluded, Federal has a duty to defend AFL. *Id*. at 5-6. Plaintiff avers that the policy does not exclude breach of fiduciary duty, fraudulent misrepresentation, breach of contract, or actions taken by AFO that directly or indirectly cause bodily injury. *Id*. at 7. In essence, Plaintiff argues that Federal is liable to pay for claims due to AFL's wrongful acts, which he properly pleads. *Id*. at 7-8. He argues that further discovery is required on the issue of the wrongful acts of AFO and its directors and officers in failing to warn or protect its players. *Id*. at 8-9.

Federal replied to Plaintiff's opposition, arguing that Plaintiff did not contradict Federal's argument that its D&O policy directly precludes coverage for Plaintiff's claims. (R. Doc. 66). Federal restates that its D&O policy plainly proscribes coverage for bodily injury claims and breach of contract claims that seek medical expenses pursuant to an alleged collective bargaining agreement. *Id*. at 1. Federal avers that Plaintiff fails to note the exclusion for breach of contract claims in the D&O Policy. *Id*. at 2. Furthermore, Plaintiffs public policy arguments misinterpret the purposes of various insurance policies – D&O policies typically excludes bodily injury claims, while CGL policies generally cover such claims. *Id*. Plaintiff also fails to cite any Louisiana law supporting his argument that this type of D&O Policy is against public policy. *Id*. at 2-5.

Additionally, while Plaintiff focuses on the term 'wrongful act' in the D&O Policy, it ignores the other policy provisions excluding his claims. Federal avers that, under Louisiana law, this interpretation fails because it does not read and interpret the policy as a whole. *Id*. While the D&O Policy covers for a claim against the insured person for a wrongful act, the claim it has to be the type of claim covered under the D&O Policy. *Id*. at 7. Plaintiff's claim is not one of those coverable claims. Federal again avers that its arguments are corroborated by the fact that AFO filed a cross-claim seeking defense and indemnity from another insurance company, but did not file a similar claim against Federal. *Id*. at 5.

Plaintiffs claim against Federal under the D&O Policy is not plausible on its face and cannot survive a 12(b)(6) motion. Under Louisiana law, Plaintiff only has a claim against Federal "within the terms and limits of the policy…." La. R. S. § 22:655(B)(1). In this case, the parties dispute the proper interpretation of Federal's policy provisions. "Interpretation of an insurance policy is a question of law." *Principal Health Care of La., Inc., v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994). The language of Federal's D&O Policy is unambiguous. While Plaintiff relies on certain sections of the policy to aver that Federal covers AFO for any and all wrongful acts done by its directors and officers, the D&O Policy must be read as a whole. *See Young v. Brown*, 27018 ( La. App. 2 Cir 06/21/95), 658 So. 2d 750, 752 (quoting *Louisiana Ins. Guar. v. Interstate Fire & Casualty Co.*, 93- C-0911 (La. 01/14/94), 630 So. 2d 759, 763) ("Ambiguity in an insurance policy must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions."). While the D&O Policy covers wrongful acts, it also contains certain exclusions, including for bodily injury and breach of contract. (R. Doc. 60-3 at 23, 25). Plaintiff's claim is undoubtable a bodily injury claim and is therefore not covered under the D&O Policy issued to AFO by Federal.

While Plaintiff avers that excluding bodily injury claims in a D&O Policy to a football league is against public policy, he provides no legal support for this claim. Further, it is not as though AFO has no insurance coverage for bodily injury claims. Those claims are typically covered under CGL Policies, which were issued by a separate insurer at the time of Plaintiff's injury. *See* 15 La. Civ. L. Treatise, Insurance Law & Practice § 6:2 (4th ed.). While the Court will not address the applicability of that coverage in this order, it is relevant that such a policy does exist, and AFL did have insurance coverage for bodily injury claims.[3] The D&O Policy is simply not intended for that purpose. *See Quinlan v. Liberty Bank & Trust Co.*, 575 So.2d 336, 341 (La. 1990). Finally, it merits noting that Plaintiff does not raise claims under the D&O Policy in his complaint.

### D. Bad Faith

Federal also argues Plaintiff fails to state a claim against Federal for bad faith. While Plaintiff makes a claim for relief in the even that Federal declines coverage, he does not allege that Federal breached its policy and his conclusions are merely legal and do not defeat a 12(b)(6) motion. (R. Doc. 60-1 at 13). He does not allege that Federal improperly or in bad faith denied coverage, underpaid a claim, or breached a contract, as required under Louisiana law. *Id*. Further, Federal argues that because Plaintiff fails to state an underlying claim against them, he cannot assert any bad-faith claims under Louisiana law. *Id*. at 14.

Plaintiff does not address these claims in his Opposition to the Motion to Dismiss. The Court finds no support for a bad faith claim on the face of the complaint.

---

[3] A claim has also been filed in this case against National. AFO filed a cross claim for defense and indemnity against National. (R. Doc. 62). While AFL's cross-claim is not dispositive, it does suggest that even AFO recognizes that Federal's policies do not cover Plaintiff's claims in this case.

## III.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Federal's Motion to Dismiss (R. Doc. 60) is **GRANTED.**

New Orleans, Louisiana, this 17th day of November, 2016.

_____
UNITED STATES DISTRICT JUDGE

9