# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LORENZO BRELAND | CIVIL ACTION |
| VERSUS | NO. 15-2258 |
| ARENA FOOTBALL ONE, LLC., ET AL | SECTION "L" |

## ORDER & REASONS

Before the Court is a Motion to Dismiss pursuant to 12(b)(6) filed by Defendant National Casualty Company seeking to dismiss the claims of Plaintiff Lorenzo Breland. (R. Doc. 58). For the following reasons, the motion is hereby denied.

## I.    BACKGROUND

This case arises out of injuries allegedly sustained by Plaintiff Lorenzo Breland while he was employed as a professional arena football player. Jurisdiction of this Court is invoked under diversity. (R. Doc. 44 at 1). Plaintiff alleges misrepresentation, fraud, negligence, and breach of contract against Defendants, Arena Football One, L.L.C. ("AFO"), which owns Arena Football League One, LLC ("AFLO"), and Louisiana Arena Football, L.L.C. ("LAF"), which owns the New Orleans Voodoo franchise. Plaintiff has also filed claims against AFO's insurers, including National Casualty Company ("National") and Federal Insurance Company ("Federal"),[1] averring that they provided a commercial general liability policy to AFO, AFLO, and LAF. (R. Doc. 53 at 3).[2]

---

[1] Plaintiffs claims against Federal were dismissed by this Court on November 18, 2016. (R. Doc. 73).

[2] Plaintiff has filed various amended complaints. (R. Docs. 1, 29, 44, 53). The third amended complaint (R. Doc. 53) was filed to amend the second amended complaint (R. Doc. 44) to remove defendant Everest National Insurance Company and add National Casualty Company and Federal Insurance Company. All other allegations in the second amended complaint were adopted *in extenso*. Accordingly, this Order will rely on both the second and third amended complaints to determine Plaintiff's claims. Defendant AFO filed answers to each complaint. (R. Docs. 6, 31, 45, 56).

Plaintiff alleges he initially sustained a concussion while playing for the Tulsa Talons in 2011, which is part of the AFO league. (R. Doc. 44 at 12). After the team doctor diagnosed Plaintiff, he alleges the team encouraged him to return and he started the following game. *Id*. at 12. Subsequently, he played for the New Orleans Voodoo. Plaintiff alleges that he sustained a severe blow to the head during a game on April 11, 2014, which caused a second concussion. (R. Doc. 44 at 12). Plaintiff claims that, after the 2014 concussion, he received inadequate medical attention and care and was pressured to return to playing football before he was fully rehabilitated. *Id*. at 12. He avers that, after complaining to the coach about his continued health problems, he was sent to a speech pathologist. *Id*. Plaintiff alleges that this head injury caused him to remain bedridden for six weeks, and that he was ultimately suspended from the league and cut from the LAF team. *Id*. at 12-13. Plaintiff avers the 2014 concussion ended his career, and Defendants did not pay for his ongoing medical care or rehabilitation to allow him to return to play in a healthy manner. *Id*. at 13. Plaintiff states that he continues to suffer long-term problems, including dizziness, memory loss, headaches, weight loss, neck aches and fatigue, and that he faces an increased risk for future disorders as a result of the injuries. *Id*. at 13, 16.

Plaintiff seeks damages, past and future medical expenses related to the concussions, and medical monitoring to facilitate the diagnosis and treatment of future disorders caused by the injuries. *Id*. at 17. Plaintiff asserts that AFO knew of the potential risks associated with head trauma but intentionally concealed them. *Id*. at 13-14; 18. Further, AFO fostered an environment of brutality and violence and ignored the wellbeing of its players for the sake of profit. *Id*. at 14. Plaintiff further alleges that Defendants breached their duties by failing to take appropriate steps to prevent or mitigate the potential for injury, avoiding such steps due to the expense and impact on league profitability. (R. Doc. 29 at 22). Plaintiff claims that Defendants falsely represented to

him that he would receive excellent medical care, which they failed to provide. *Id*. at 13. Plaintiff alleges that the league players' collective bargaining agreement created an obligation that the Defendants pay all medical expenses resulting from any injury sustained while playing in a game, but that Defendants have acted in bad faith and refused to pay any expenses incurred as a result of Plaintiff's 2014 concussion. *Id*. at 26.

Specifically, Plaintiff seeks (1) Declaratory Relief under 28 USC §2201 stating that Defendants knew or should have known about the long-term effects of trauma to the head that Plaintiff endured while playing for AFO, had a duty to advise Plaintiff of that risk but instead willfully and intentionally concealed the risk, and recklessly endangered Plaintiff; (2) an injunction for Court-supervised and Defendant-funded medical monitoring for long-term neurological affects as a result of Plaintiffs' minor traumatic brain injuries ("MTBI"), which was a result of Defendants' tortious conduct; (3) compensatory damages for past, current, and future medical care; (4) compensatory damages for pain and suffering; (5) punitive damages; (6) any other relief; (7) attorneys' fees; (8) and injunction and/or equitable relief against National, holding that the insurance policy provided coverage for Plaintiffs' injuries and claims and holding National in bad faith under La. R.S. §§22:1892 and 22:1973. (R. Doc. 44 at 14-28). Specifically to 8, Plaintiff seeks all forms of insurance penalties, bad faith damages, general damages, and attorneys' fees permitted under the aforementioned statutes if National declines coverage. (R. Doc. 53 at 3).

Plaintiff's original Complaint had stated that he was an employee of AFO and the New Orleans Voodoo, and that he was employed by AFO from 2010 to 2014. (R. Doc. 1 at 11-12). Plaintiff added Defendant LAF to the suit after discovering that LAF owned the New Orleans Voodoo during the time period relevant to Plaintiff's injuries. (R. Doc. 16 at 1). Plaintiff

submitted that he had mistakenly claimed in the Complaint that he was employed by AFO, when in fact he was never employed by AFO. (R. Doc. 16-1 at 2).

## II.   PRESENT MOTION

National now moves to dismiss this case on the ground that Plaintiff failed to state a claim against them and because there is no coverage under the Commercial General Liability Policy ("CGL Policy") issued by National for Plaintiffs allegations of bodily injury and breach of contract against AFO. (R. Doc. 58-1). Plaintiffs filed an Opposition (R. Doc. 75) and, with leave of the Court, National filed a reply (R. Doc. 80).

### A.  National's Arguments

Plaintiff pleads claims against National for insurance coverage, general damages, attorney's fees, and/or statutory penalties under La. R.S. 22:1892, 1973. National seeks a dismissal of Plaintiff's claims, arguing that he fails to properly plead and state a cognizable claim. (R. Doc. 58-1).

National first argues that Plaintiff fails to aver the necessary factual allegations to meet the basic pleading requirements. *Id*. at 1. Accordingly, National asks the Court to dismiss Plaintiff's claim as insufficiently pled.

Further, National argues that any relief Plaintiff seeks is either legally or contractually unavailable to him. National avers that Plaintiff's breach of contract and tort claims are not covered under their CGL Policy. *Id*. at 1-2; *Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F.3d 909 (5th Cir. 1997).[3] National first avers that Plaintiff's claims for breach of contract

---

[3] National states that it is proper for the Court to look at the CGL Policy when deciding this motion to dismiss, because Plaintiff references the policy in his petition, and the CGL policy is central to his claim. *Carter v. Target Corp.*, 541 F.App'x. 413, 416-17 (5th Cir. 2013). Accordingly, the Court can analyze the CGL Policy without turning this motion into a motion for summary judgment. Plaintiff does not contest this point.

and tort are untenable because in signing the Standard Player Contract in 2012, he expressly assumed the risk of participating in Arena Football, including that of injury or death. (R .Doc. 58-1 at 4). Second, the CGL Policy states that National is only liable to pay for sums that the insured (AFO) "becomes legally obligated to pay as damages," which, National argues, under Fifth Circuit law does not apply in the instant case. Id. at 7; Exhibit B, Insuring Agreement § I(A)(1)(a); Data Specialties, Inc. v. Transcontinental Ins. Co., 125 F.3d 909 (5th Cir. 1997) (finding that to be "legally obligated to pay as damages...the insured's tortious conduct must have caused the damages.") Accordingly, National argues no coverage can exist under the CGL Policy for breach of contract claims. (R. Doc. 58-1 at 8).

National argues that Plaintiff's tort cause of action is insufficiently pled because he alleges only conclusory statements with no factual basis. *Id*. Further, the CGL policy expressly excludes coverage for Plaintiff's alleged tort causes of action, specifically for any damages related to brain injuries, including concussions, "sustained by a 'player' arising out of or in any way related to participation in any sports or athletic game, contest, event, exhibition or practice." *Id*. at 10; Exhibit B, Endorsement - Form UT-3g (3-92). National argues Plaintiff's claims under tort are expressly excluded and are accordingly not recoverable under the CGL Policy.

In addition, National argues that Plaintiff has no legal right to assert claims under Louisiana's bad faith statutes and/or that Plaintiff's claims are not sufficiently pled because they do not properly assert a right to relief under Louisiana law. (R. Doc. 58-1 at 2). Under La. R.S. 22:1892, as a third-party claimant to the CGL Policy, Plaintiff only has rights to assert claims for National's failure to pay reasonable medical expenses within thirty days after written agreement of settlement of the claim, or for National's failure to initiate loss adjustment within fourteen days of notification. National avers Plaintiff is untimely under that section. Further, under

Louisiana law, to recover as a third-party claimant under section 1973, Plaintiff must provide

factual allegations that tend to show a knowing violation of one or more of the proscribed actions

under 1973(b). *Kelly v. State Farm Fire & Cas. Co.*, 2014-1921 (La. 5/5/15), 169 So.2d 328,

335.  National avers that because section 1973(b) does not prohibit an insurance company from

denying coverage, Plaintiff cannot prove a knowing violation. (R. Doc. 58-1 at 14). Further, a

knowing violation does not include the willful refusal of a claim under a good-faith defense. (R.

Doc. 58-1 at 15-16). Accordingly, National argues that Plaintiff's tort claims fail.

### B.  Plaintiff's Arguments

Plaintiff opposes National's Motion, arguing that his complaint is well-pled and that

ongoing discovery makes this motion untimely. (R. Doc. 75 at 1). Plaintiff again asserts claims

for tortious misconduct including misrepresentation, fraud, negligence, and bad-faith breach of

contract. *Id*. at 1-2. Plaintiff argues that AFL and its associates failed to take any measures to

protect its players from the direct and permanent effects of concussions sustained during football

games. *Id*. at 2. Plaintiff contends that National misrepresents his complaint in arguing that his

case is based entirely on a breach of the Collective Bargaining Agreement – Plaintiff also alleges

tort and negligence claims that are covered under National's insurance policy. *Id*. at 3-4. Plaintiff

also avers that the factual conduct National seeks are still being discovered and are not yet ripe

for a motion to dismiss. *Id*. at 4.

Plaintiff argues that, under Louisiana law, National has a duty to defend claims brought

against its insured that goes beyond a duty to indemnify. *Id*.; *Hardy v. Hartford Ins. Co.*, 236

F.3d 287 290 (5th Cir. 2001). Unless the policy unambiguously excludes the claims in a petition,

the insurer must defend the insured. (R. Doc. 75 at 4); *United Fire & Cas. Co. v. Hixson Bros.*,

453 F.3d 283, 285 (5th Cir. 2006). Under Louisiana law, this means that insurance companies

must defend the insured if there is a possibility that liability exists under the policy. *Alwell v. Meadowcrest Hops. Inc.*, 971 So.2d 411, 414 (La. App. 5th Cir. 2007).

While National references a Concussion Exclusion section and a Participant Exclusion section of the insurance policy, Plaintiff claims that that section was only in the 2014 CGL policy, not in the three years preceding. *Id*. Plaintiff was employed as a football player for four season from 2011-2014. Plaintiff avers that his claims comprise conduct that occurred *throughout* those four seasons, and are not limited to the two concussion incidents. Accordingly, Plaintiff argues the policies for all four of those years are at issue in this case. (R. Doc. 75 at 5). National therefore should not be permitted to rely on those exclusions for the entirety of the claims - their duty to defend and their coverage of Plaintiff's claims in the three preceding years are genuine issues of material fact. *Id*. Finally, Plaintiff avers that, under Louisiana and Fifth Circuit precedent, Plaintiff's head injuries are construed as cumulative, continuous exposure rather than as one concussive event. *Id*. Accordingly, even if National's 2014 Concussion Exclusion applies, insurance coverage is afforded to Plaintiff because the exclusion does not apply to the cumulative exposure to such trauma Plaintiff sustained in the three years preceding, regardless of when any recorded concussion took place. *Id*. at 8.

Plaintiff also states that it is not clear that all of Plaintiff's injuries are causally-linked to his concussions, and the Concussion Exclusion should therefore not automatically apply. *Id*. at 6. While Plaintiff admits there may be a link between his ongoing injuries and his concussions, this fact is not sufficiently proven at this stage.

Finally, Plaintiff argues that National misrepresents the Sport or Athletic Activities Participants Exclusion. *Id*. Plaintiff avers that the exclusion does not preclude coverage of any participant in any game or activity, but rather to bodily injury to a participant participating in an

activity listed in the Schedule. *Id*. Plaintiff avers the games and teams at issue in this case do not appear on that Schedule, making the exclusion inapplicable. *Id*. Further, Plaintiff avers that the concussion exclusion that National references is ambiguous and its interpretation is therefore a genuine issues of material fact.

In all, Plaintiff argues that National's cited exclusions are either ambiguous, nullified, or inapplicable to the entire timeline at issue, and National, therefore, does not merit a dismissal. Plaintiff's allegations, he argues, require National to provide AF1 with a defense and possibly indemnity.

### C.  Law & Analysis

#### i.  Motion to Dismiss Standard

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court must construe facts in the light most favorable to the nonmoving party. *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir. 2009). The court must accept as true all factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Dismissal is appropriate only if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation et al. v. William Twombly,* 550 U.S. 544, 570 (2007). A motion to dismiss under rule 12(b)(6) is "viewed with disfavor and is rarely

granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).

                 ii.  <u>Application</u>

This Court previously determined that Plaintiff satisfied the standard to survive a Rule 12(c) motion for judgment on the pleadings, finding that the complaint stated a claim that was "plausible on its face." *Twombly*, 550 U.S. at 570; (R. Doc. 30). The standard for a motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss. *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009). Accordingly, Defendant's arguments that Plaintiff failed to satisfy the pleadings standards are denied.

Further, while this Court acknowledges it may review National's CGL Policy in deciding this motion, the interpretation National asks this Court to perform is beyond the scope of a 12(b)(6) motion to dismiss. While the exclusions and policy provisions of the CGL Policy may ultimately preclude Plaintiff's recovery, they do not do so unambiguously, but instead present genuine issues of material fact as to their interpretation. This Court finds that the applicability of the exclusions, the applicability of each of the four separate policies, and the applicability of the terms to this specific case are not ripe for determination. There is a genuine dispute regarding or not Plaintiff's two concussions are covered and whether or not his injuries are two separate events or a series of traumas throughout his four years as an arena football player. Dismissal is appropriate only if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. Plaintiff has not failed to do so here, and dismissal is accordingly inappropriate at this time.

### III.     CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that National's Motion to Dismiss (R. Doc.

58) is **DENIED.**

New Orleans, Louisiana, this 22nd day of December, 2016.

_____
UNITED STATES DISTRICT JUDGE