UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LORENZO BRELAND<br>            Plaintiff | CIVIL ACTION NO. 15-2258 |
| VERSUS | JUDGE ELDON E. FALLON |
| ARENA FOOTBALL ONE, LLC,<br>NEW ORLEANS VOODOO FOOTBALL,<br>INC.<br>            Defendant | MAG. DANIEL E. KNOWLES, III |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Defendant, Arena Football One, LLC ("AFO"), respectfully submits the following Memorandum in support of its Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support thereof, AFO would respectfully demonstrate to the Court that the uncontested facts establish that at the time of his alleged injuries, the plaintiff, Lorenzo Breland, was an employee of AFO. The plaintiff's sole avenue for recovery against AFO is, therefore, through the Louisiana Worker's Compensation Act ("LWCA"), which precludes the instant suit.

## BACKGROUND

This personal injury action stems from alleged occupational injuries plaintiff purportedly sustained while employed as a professional football player by AFO. Specifically, the plaintiff contends that he suffered two separate concussions, purportedly resulting in continued physical

complaints and allegedly putting him at risk for long term complications.[1]  Plaintiff maintains that AFO was aware of the risk posed by recurrent head injuries but neither informed the plaintiff of these alleged risks, nor took sufficient action to limit the potential for injuries to employees such as the plaintiff.[2]  As a result, plaintiff seeks damages, including medical monitoring, declaratory relief and tort damages and has asserted claims for fraudulent misrepresentation, fraud, negligent misrepresentation, negligence and breach of contract.[3]  It is undisputed that plaintiff was an employee of AFO at all material times relative to the claimed injuries.[4] The LWCA provides the exclusive remedy for all "rights, remedies, and claims for damages" relating to an employee's claimed injuries, other than those intentionally inflicted. La. R.S. 23:1032(A)(1)(a).  Accordingly, the only claim the plaintiff may validly pursue against AFO is one of intentional tort.  The Complaint neither alleges such a cause of action nor has plaintiff produced evidence to support one.  Plaintiff's suit is, therefore, barred by the exclusivity provision contained within the LWCA and this action should be dismissed.

## LAW AND ARGUMENT

### I.     Summary Judgment is Appropriate

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the

---

[1] Second Amended Complaint for Damages [R. Doc. 44] at ¶ 36-37 and 53.  Plaintiff's Third Amended Complaint [R. Doc. 53] was filed to amend the Second Amended Complaint, to substitute insurer defendants. All other allegations in the Second Amended Complaint were adopted *in extenso*. For the sake of clarity, AFO's memo will reference the specific allegations set forth in the Second Amended Complaint.
[2] *Id.* at ¶ 55, 57.
[3] *Id.* at ¶ 1.
[4] Deposition of Lorenzo Breland, attached hereto as Exhibit 1, at p. 18, lines 3-8.  Opposing counsel also represented that it was no longer disputed that plaintiff was an employee of AFO to the Court during the parties most recent status conference on January 5, 2017.

record is insufficient with respect to an essential element of the nonmoving party's claim. *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *Id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994), citing *Celotex*, 477 U.S. at 325.

A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence." *Id.* Nor will the mere argued existence of a factual dispute defeat an otherwise properly supported motion. *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Indeed, only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Id.* at 249.

The LWCA provides that a person rendering service for another in "any trades, businesses or occupations" covered under the LWCA is "presumed to be an employee," thereby creating a statutory presumption of employment status. La. R.S. 23:1044. A court should construe the LWCA with an end to including the worker within the ambit of its protection. *Rush v. Employer's Nat. Ins. Co.*, 598 So.2d 603, 605 (La. App. 2d Cir. 1992). This principal must be equally applied when an injured person seeks exclusion from the Act in order to recover damages in tort. *Id.* (citations omitted).

Here, the plaintiff now concedes that he was a direct employee of AFO, who was purportedly injured in the course and scope of employment.[5] Consequently, AFO is immune from tort liability under La. R.S. 23:1032. Under Louisiana law, an employee's exclusive

---

[5] Exhibit 1, at p. 18, lines 3-8.

remedy against an employer for all "rights, remedies, and claims for damages" related to personal injuries or illnesses are through the LWCA; the sole exception being a claim for intentional tort. La. R.S. 23:1032(A)(1)(a); see also *Cole v. State Dep't of Pub. Safety & Corr.*, 2001-2123, p. 4-5 (La. 9/4/02), 825 So.2d 1134, 1138. The plaintiff bears the burden of demonstrating a work-related injury resulted from an intentional act. *Mayer v. Valentine Sugars, Inc.*, 444 So.2d 618 (La.1984).

Plaintiff bears the burden of proof at trial on both the issues of employment status and intentional tort. In order to defeat summary judgment, therefore, plaintiff is required to produce competent evidence sufficient to establish that AFO acted to intentionally harm him. This plaintiff cannot do.

## II. **Plaintiff's Exclusive Remedy Lies Under the LWCA, Not in Tort.**

### a. Plaintiff is an Employee of AFO

Although plaintiff's Original Complaint asserted that he was an employee of AFO, when AFO brought a Motion for Judgment on the Pleadings, plaintiff denied the veracity of his own representations and sought leave to amend his Complaint to remove all allegations of employment status.[6] During his deposition, however, the plaintiff readily admitted that, at all material times, he was an employee of AFO. As he testified:

---

[6] Plaintiff's Opposition to AFO's Motion for Judgment on the Pleadings, [R. Doc. 15]. Inexplicably, within sixty days of the filing of his Opposition, Breland executed a verified petition for Workers' Compensation benefits listing AFO as his employer, attached hereto as Exhibit 2-D.

4

> Q. So to be clear, for actually playing football, for the service of playing football, you were always paid by Arena Football One, LLC. Is that correct?
>
> A. Correct.[7]
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*
>
> Q. During the time that you played for Tulsa and then the time you played for the New Orleans Voodoo, did you consider yourself to be an employee of Arena Football One, LLC?
>
> A. Yes, sir.
>
> Q: And is it a fair statement that the standard player contract– is that the term of art that's used when you sign your contract?
>
> A: Yeah, standard player contract.
>
> Q: Is it a fair statement that the standard player contract specified that you were an employee of Arena Football One, LLC?
>
> A: Correct.[8]

Plaintiff also confirmed that he personally executed and voluntarily entered into the Standard Player Contract ("SPC") which specified he was an employee of Arena Football One.[9] Breland admitted that under the SPC he was paid by AFO and could be disciplined or terminated by AFO.[10]

Breland also testified that he was a union representative for the Arena Football Players Union and had reviewed and was familiar with the Collective Bargaining Agreement ("CBA") entered into by the union on his behalf.[11] Breland confirmed that under the terms of the CBA, AFO had the right to control the actions of the players, including himself. AFO determined which players were assigned to which team; AFO determined the means, methods and schedules

---

[7] Exhibit 1 at p. 16, lines 16-20; See also certified copies of plaintiff's earning history from the Social Security Administration, attached hereto as Exhibit 3.
[8] Exhibit 1 at p. 18, lines 3-8.
[9] *Id*. at pp. 18- 20, see also the Standard Player Contract, authenticated by plaintiff, attached as Exhibit 2-B.
[10] *Id*. at p. 21 and Collective Bargaining Agreement, authenticated by plaintiff, attached as Exhibit 2-A.
[11] *Id*. at pp. 24-27.

of team practices and games; AFO imposed rules on team operations; AFO selected and specified equipment and supplies used in games, including helmets, pads, uniforms and footballs; and AFO had the right to transfer and terminate players.[12]

Following his claimed injury in April of 2014, plaintiff submitted a grievance through his union.[13] That matter was resolved with AFO and a settlement entered, foreclosing any further action regarding plaintiff's alleged breach of the CBA.[14] The settlement agreement allowed the plaintiff to pursue any residual claims only under workers' compensation.[15] Plaintiff is presently pursing a claim for workers' compensation benefits against AFO and his counsel is in the process of negotiating a settlement of those claims.[16] In light of this uncontested evidence, plaintiff is undisputedly an employee of AFO and the instant claims are barred by the exclusivity provisions of the LWCA.

### b. Plaintiff has failed to plead his injuries were the result of an "intentional act" imputable to AFO.

Because this is a diversity case, state law provides the elements of Plaintiffs' claims.[17] As noted, the LWCA provides the exclusive remedy for an employee who is injured during the course and scope of his employment. La. R.S. 23:1032(A)(1)(a). The plaintiff has failed to allege, let alone produce competent evidence, that AFO committed an intentional tort which

---

[12] *Id.* at p. 31-33.
[13] Affidavit of Joseph Kleinsmith, attached as Exhibit 2 at ¶ 9.
[14] Id. at ¶ 10.
[15] Id. see also Memorandum of Understanding, Settlement Agreement and Amendment to the Collective Bargaining Agreement, attached as Exhibit 2-C
[16] Exhibit 1, pp. 53-55.  See also Plaintiff's verified petition for Workers' Compensation benefits listing AFO as his employer, attached hereto as Exhibit 2-D.
[17] Second Amended Complaint [R. Doc. 44 ] at ¶ 28 (invoking federal diversity jurisdiction); See also *Thrash v. State Farm Fire & Cos. Co.,* 992 F.2d 1354, 1356 (5th Cir.1993) (citations omitted).

could potentially give rise to independent delictual liability, that is because no such evidence exists.

In order to qualify for the intentional act exception, Louisiana jurisprudence requires a strong link between the employer's conduct and the employee's injury. *Guillory v. Domtar Industries, Inc.*, 95 F.3d 1320, 1328 (5th Cir. 1996), citing *Williams v. Gervais F. Favrot Co.*, 573 So.2d 533, 541 (La.App. 4th Cir.1991), writ denied, 576 So.2d 49 (La.1991). The intentional act exception is narrowly construed. *Reeves v. Structural Preservation Systems,* 98–1795, p. 6-7 (La.3/12/99); 731 So.2d 208, 211. The plaintiff must establish that AFO either acted with a conscious desire to attain the physical result of its act or knew that the result was substantially certain to follow from its conduct. *Bazley v. Tortorich*, 397 So.2d 475, 482 (La. 1981).

The "substantially certain" tests is satisfied only when an employer consciously subjects an employee to a hazard or defective work environment where injury to the employee is nearly inevitable, that is the injury is almost certain, virtually assured to occur, or is incapable of being avoided. *Reeves,* 731 So. 2d at 213, citing *Jasmin v. HNV Central Riverfront Corp.,* 94–1497 (La.App. 4 Cir. 8/30/94), 642 So.2d 311, 312, writ denied, 94–2445 (La.12/9/94), 647 So.2d 1110. Similarly, the belief that someone may or probably will eventually get hurt if a work place practice is continued, does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by the LWCA. *Id*.

In the instant case, the Complaint does not allege, and plaintiff has offered no evidence that AFO consciously desired that Breland would sustain the injuries alleged. Although the Complaint incorporates terms like "fraud", a plain reading of the allegations demonstrates that these causes of action are, at their essence, claims for negligence. Indeed, plaintiff generally

asserts that AFO "knew or should have known" that brain injury was *possible* from engaging in professional sports.[18] There is no allegation, let alone evidence, that playing professional football would inevitably result in brain injury and/or cognitive impairment.

Despite the Complaint's conclusory assertions that AFO has, "been aware of and understood the significance of published medical literature dating as early as the 1920s that there is a serious risk of short-term and long term brain injury associated with repetitive traumatic impacts to the head to which AFL players are exposed,"[19] there is simply no factual support for or reasonable inference of any intent on the part of AFO to injure the plaintiff, nor any attempt to withhold information from him.

AFO has not commissioned any private or proprietary studies relating to any injury, including but not limited to concussion, chronic traumatic encephalopathy, dementia, or any other condition or disease related to participation in the sport of Arena Football.[20] Consequently, AFO could not have withheld any information from the plaintiff, since the only available information available to AFO on the subject was that available to the general public, including the plaintiff and his union. Indeed, AFO is not aware of any peer-reviewed study or other scientific publication that has ever concluded that any injury, including those alleged by the plaintiff, is substantially certain to follow from participation in football activities.[21] Plaintiff does not allege otherwise, but merely contends that general knowledge of the potential risks associated with a specific workplace activity is enough to impose liability on his employer. It is not.

---

[18] Second Amended Complaint [R. Doc.44] at ¶ 12; 14; 15 and 16.
[19] *Id.* at ¶ 79.
[20] Affidavit of Joseph Kleinsmith, attached as Exhibit 2 at ¶ 12.
[21] Id. at ¶ 13.

The Louisiana Fifth Circuit succinctly addressed similar arguments regarding the employer's purported knowledge when it upheld the trial court's granting of an exception of no cause of action with regard to personal injury claims against the plaintiff's employer. The court reasoned as follows:

> [plaintiff's] argument reduced to its essentials is that if an occupation or industry is dangerous, then eventually someone will certainly be injured, and thus, an employer in such a business must necessarily know that injury is certain to occur. To accept this line of reasoning would mean that any employer with knowledge of prior injuries in his occupation or industry, or *who is aware of statistical or actual data showing such injuries*, would be liable in intentional tort for all subsequent injuries to his employees. Clearly, this is not what was intended by the legislature in exempting "intentional acts" from the exclusive provisions of the compensation laws....[22]

Likewise, here the plaintiff has confused negligence with intentional tort. The Complaint's unfounded allegations that AFO "knew or should have known" of an increased risk of long and short term brain injury as the result of engaging in professional football is devoid of any fact or evidence that can possibly impute an intent to injure the plaintiff to AFO. Indeed, the plaintiff confirmed in his deposition he had no such evidence:

---

[22] *Maddie v. Plastics Supply and Fabrication, Inc.,* 434 So.2d 158, 161 (La.App. 5 Cir. 3/8/83), writ denied, 435 So.2d 445 (La. 1983) (emphasis added).

> Q.   **So do you have any evidence to support the allegation that the defendants knowingly failed to protect you from the injuries that you're alleging?**
>
> A.   Knowingly? Can you repeat that one more time?
>
> Q.   Sure.
>
>      Knowingly failed to protect you from your injuries?
>
> A.   **No.** Other than, like I said, after my injury, they got the help that was available as far as registering blows to see if it would warrant a concussion or not. But during that time --[23]

While it is *possible* that anyone engaged in physical activity may suffer from injury, far more than a simply awareness of the *potential* for injury is required to expose plaintiff's employer to claims of intentional tort. To allow plaintiff's claims to proceed, one would have to accept that every player from "pee wee" football, high school, college and through the professional ranks who buckles a chin strap is substantially certain to suffer some form of brain injury. Such a position flies in the face of logic and the very literature the plaintiff cites in his Complaint. As plaintiff has present no competent evidence to support his claims, this action is ripe for summary judgment.[24]

### c. The "scientific literature" on which the plaintiff's claims are premised undermines any suggestion of intent on the part of AFO.

As has been repeatedly held, the mere knowledge and appreciation of risk does not constitute intent, nor does reckless or wanton conduct or gross negligence. *Tapia v. Schwegmann Giant Supermarkets, Inc.,* 590 So.2d 806, 807–808 (La.App. 4 Cir.1991). An injury may not be considered as intentionally inflicted merely because there exists a high probability of such an

---

[23] Exhibit 1 at p. 133, lines 3-16 (emphasis added). Breland later admitted the sensor technology he references would not have prevented injury, only identified if a blow was sufficient to cause a concussion. *Id.* at p. 138-140.
[24] In response to AFO's requests for production plaintiff produced a single medical record and a one page letter from his union relating to his grievance.

injury occurring. *Moffuse v. Jace Oilfield Sales and Service, Inc.*, 569 So.2d 1074, 1077 (La.App. 3 Cir. 1990). An employer's conduct must go beyond knowingly permitting a hazardous work condition to exist, ordering an employee to perform an extremely dangerous job, or willfully failing to furnish a safe place to work in order to constitute an intent to injure, necessary under the intentional act exception. *Williams,* 573 So.2d at 540.

Here, the Complaint merely asserts that there was information being circulated within the scientific community that suggested that athletes exposed to repeated head trauma *may* suffer an increased risk of developing long term cognitive issues.[25] Rather than establishing that any such injuries or conditions were "substantially certain" to occur, the studies referenced in the Complaint confirm just the opposite, that the risk of such maladies *was not even probable*.

The plaintiff cites to unidentified scientific studies which reveal that no more than 36% of professional football retirees, ages 65-75, suffered from dementia.[26] None of the literature cited by the plaintiff indicates that 100% of former professional football players developed cognitive issues. Indeed, far from showing that all athletes exposed to repeated head trauma develop long term issues, in the studies cited by plaintiff, *none found even a majority of professional athletes suffered from these conditions*.[27] Through the course of discovery, plaintiff has not produced any evidence that suggests that every individual who plays arena football, or football at any level for that matter, are substantial certain to develop any of the maladies alleged. That is because no such evidence exists.

Even if the studies relied upon by plaintiff are to be believed, such assertions demonstrate that the vast majority of individuals who engage in contact sports, including football, do not

---

[25] Second Amended Complaint [R. Doc. 44] at ¶17-20.
[26] Id. at ¶19.
[27] Id. at ¶9-20.

suffer from any long term cognitive effects. As such, it can hardly be contended that head injuries or long term cognitive defects are "substantially certain" to result from engaging in professional football, whether it be in Arena Football or otherwise. Accordingly, plaintiff has failed to establish even the basic foundation in order to prevail on a claim for intentional tort, as it must, to overcome the exclusivity provisions of the LWCA, and plaintiff's claims should properly be dismissed.

## CONCLUSION

It is undisputed that the plaintiff was an employee of AFO at the time of his claimed injuries. Accordingly, the plaintiff's sole remedy is under the LWCA, unless he can establish that AFO intended to cause the injuries of which he now complains. The plaintiff has failed to plead, let alone establish, that AFO acted with a conscious desire to injure him, or that it knew that an injury, disease or medical condition of any kind was "substantially certain" to follow from plaintiff's participation in the sport of Arena Football. To the contrary, the "scientific literature" upon which the plaintiff relies fails to establish even a probability of such maladies. The evidence developed shows no genuine issue of material fact which could possibly lead to the conclusion that AFO acted in a manner so certain to cause injury that intent to injure the plaintiff could be imputed to it. Accordingly, summary judgment is appropriate and plaintiff's suit should be dismissed with prejudice and at his cost.

Respectfully submitted;

TAYLOR, WELLONS, POLITZ & DUHE, APLC

*/s/Jason D. Bone*

_____
Charles J. Duhe, Jr. (#20170)
cduhe@twpdlaw.com
Paul J. Politz (#19741)
ppolitz@twpdlaw.com
Jason D. Bone (#28315)
jbone@twpdlaw.com
TAYLOR, WELLONS, POLITZ & DUHE, APLC
1515 Poydras Street, Suite 1900
New Orleans, LA 70112
Telephone:  504-525-9888
Facsimile: 504-525-9899
***Counsel for Arena Football One, LLC***

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing pleading has been electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing to all counsel of record in this matter via the electronic filing system, on this 30th day of January, 2017.

*/s/Jason D. Bone*

_____
TAYLOR, WELLONS, POLITZ & DUHE, APLC