# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LORENZO BRELAND** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-2258** |
| **ARENA FOOTBALL ONE, LLC,**<br>**NEW ORLEANS VOODOO FOOTBALL, INC.** | **SECTION "L" (3)** |

## ORDER & REASONS

Before the Court is Defendant Arena Football One's Motion seeking Summary Judgment. (R. Doc. 87). The Court has reviewed the motions and applicable law, and issues the following order and reasons.

### I. BACKGROUND

This case arises out of injuries allegedly sustained by Plaintiff Lorenzo Breland while he was employed as a professional arena football player. Jurisdiction of this Court is invoked under diversity. (R. Doc. 44 at 1). Plaintiff alleges misrepresentation, fraud, negligence, and breach of contract against Defendants, Arena Football One, L.L.C. ("AFO"), which owns Arena Football League One, LLC ("AFLO"), and Louisiana Arena Football, L.L.C. ("LAF"), which owns the New Orleans Voodoo franchise. Plaintiff has also filed claims against AFO's insurers, including National Casualty Company ("National") and Federal Insurance Company ("Federal"),[1] averring that they provided a commercial general liability policy to AFO, AFLO, and LAF. (R. Doc. 53 at 3).[2]

---

[1] Plaintiffs' claims against Federal were dismissed by this Court on November 18, 2016. (R. Doc. 73).

[2] Plaintiff has filed various amended complaints. (R. Docs. 1, 29, 44, 53). The third amended complaint (R. Doc. 53) was filed to amend the second amended complaint (R. Doc. 44) to remove defendant Everest National Insurance Company and add National Casualty Company and Federal Insurance Company. All other allegations in the second amended complaint were adopted *in extenso*. Accordingly, this Order will rely on both the second and third amended complaints to determine Plaintiff's claims. Defendant AFO filed answers to each complaint. (R. Docs. 6, 31, 45, 56).

Plaintiff alleges he initially sustained a concussion while playing for the Tulsa Talons in 2011, which is part of the AFO league. (R. Doc. 44 at 12). After the team doctor diagnosed Plaintiff, he alleges the team encouraged him to return and he started the following game. *Id*. Subsequently, he played for the New Orleans Voodoo. Plaintiff alleges that he sustained a severe blow to the head during a game on April 11, 2014, which caused a second concussion. *Id.* Plaintiff claims that, after the 2014 concussion, he received inadequate medical attention and care and was pressured to return to playing football before he was fully rehabilitated. *Id*. He avers that, after complaining to the coach about his continued health problems, he was sent to a speech pathologist. *Id*. Plaintiff alleges that this head injury caused him to remain bedridden for six weeks, and that he was ultimately suspended from the league and cut from the LAF team. *Id*. at 12-13. Plaintiff avers the 2014 concussion ended his career, and Defendants did not pay for his ongoing medical care or rehabilitation to allow him to return to play in a healthy manner. *Id*. at 13. Plaintiff states that he continues to suffer long-term problems, including dizziness, memory loss, headaches, weight loss, neck aches and fatigue, and that he faces an increased risk for future disorders as a result of the injuries. *Id*. at 13, 16.

Plaintiff seeks damages, past and future medical expenses related to the concussions, and medical monitoring to facilitate the diagnosis and treatment of future disorders caused by the injuries. *Id*. at 17. Plaintiff asserts that AFO knew of the potential risks associated with head trauma but intentionally concealed them. *Id*. at 13-14; 18. Further, AFO fostered an environment of brutality and violence and ignored the wellbeing of its players for the sake of profit. *Id*. at 14. Plaintiff further alleges that Defendants breached their duties by failing to take appropriate steps to prevent or mitigate the potential for injury, avoiding such steps due to the expense and impact on league profitability. (R. Doc. 29 at 22). Plaintiff claims that Defendants falsely represented to

him that he would receive excellent medical care, which they failed to provide. *Id*. at 13. Plaintiff alleges that the league players' collective bargaining agreement created an obligation that the Defendants pay all medical expenses resulting from any injury sustained while playing in a game, but that Defendants have acted in bad faith and refused to pay any expenses incurred as a result of Plaintiff's 2014 concussion. *Id*. at 26.

Specifically, Plaintiff seeks (1) Declaratory Relief under 28 USC §2201 stating that Defendants knew or should have known about the long-term effects of trauma to the head that Plaintiff endured while playing for AFO, had a duty to advise Plaintiff of that risk but instead willfully and intentionally concealed the risk, and recklessly endangered Plaintiff; (2) an injunction for Court-supervised and Defendant-funded medical monitoring for long-term neurological affects as a result of Plaintiffs' minor traumatic brain injuries ("MTBI"), which was a result of Defendants' tortious conduct; (3) compensatory damages for past, current, and future medical care; (4) compensatory damages for pain and suffering; (5) punitive damages; (6) any other relief; (7) attorneys' fees; (8) and injunction and/or equitable relief against National, holding that the insurance policy provided coverage for Plaintiffs' injuries and claims and holding National in bad faith under La. R.S. §§22:1892 and 22:1973. (R. Doc. 44 at 14-28). Specifically to 8, Plaintiff seeks all forms of insurance penalties, bad faith damages, general damages, and attorneys' fees permitted under the aforementioned statutes if National declines coverage. (R. Doc. 53 at 3).

Plaintiff's original Complaint had stated that he was an employee of AFO and the New Orleans Voodoo, and that he was employed by AFO from 2010 to 2014. (R. Doc. 1 at 11-12). Plaintiff added Defendant LAF to the suit after discovering that LAF owned the New Orleans Voodoo during the time period relevant to Plaintiff's injuries. (R. Doc. 16 at 1). Plaintiff submitted that he had mistakenly claimed in the Complaint that he was employed by AFO, when in fact he

3

was never employed by AFO. (R. Doc. 16-1 at 2). However, Defendants maintain, and Plaintiff now concedes, that Plaintiff was an employee of AFO at all relevant times. (R. Doc. 87-1 at 2 n.4; R. Doc. 94 at 3).

## II. PRESENT MOTION

Defendant Arena Football One, LLC ("AFO") brought the present motion for summary judgment, maintaining that the instant suit is precluded because at the time of his alleged injuries, Plaintiff was an employee of AFO and therefore can only seek recovery through the Louisiana Worker's Compensation Act ("LWCA"). (R. Doc. 87-1 at 1). Plaintiff responded, alleging that certain claims under intentional tort remain: AFO failed to pay Plaintiff's medical expenses, failed to provide medical treatment, and failed to have a proper concussion protocol. (R. Doc. 94). Because AFO acted with specific intent to cause him injury and damages and because intentional torts are excluded from the LWCA, Plaintiff argues his suit is properly before this court. *Id.* at 3.

## III. LAW AND ANALYSIS

### a. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little,* 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta,* 530 F.3d at 399.

### b. Louisiana Worker's Compensation Act

This Court is faced with the question of whether AFO is immune from tort liability under the LWCA as Plaintiff's employer. (R. Doc. 87-1 at 3). The LWCA provides that "a person rendering service for another in any trades, businesses or occupations covered by [the LWCA] is presumed to be an employee." La. R.S. § 23:1044 (2016). An employee injured in the course and scope of his employment is entitled to compensation from his employer. La. R.S. § 23:1031. The LWCA is the exclusive remedy for an employee injured in the course and scope of his employment, with the exception of liability for intentional acts. La. R.S. § 23:1032 (2016). The plaintiff bears the burden of demonstrating that an injury arose from an intentional act. *See Mayer v. Valentine Sugars, Inc.*, 444 So.2d 618, 620-21 (La. 1984).

5

The court construes the LWCA with the goal of including a worker within its protection, a principle that is equally applied when a worker seeks exclusion from the LWCA to sue in tort. *Rush v. Employers Nat'l Ins. Co.*, 598 So.2d 603, 605 (La. App. 2 Cir. 1992). Accordingly, the intentional act exception is narrowly construed. *Reeves v. Structural Preservation Systems*, 731 So.2d 208, 211 (La. 1999). There must be a strong link between the employer's conduct and the employee's injury for the intentional act exception to apply. *Guillory v. Domtar Industries, Inc.*, 95 F.3d 1320, 1328 (5th Cir. 1996).

For the intentional act exception to apply, the employer must either "(1) consciously desire[] the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) know[] that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Bazley v. Tortorich*, 397 So.2d 475, 481 (La. 1981). For a result to be substantially certain to follow, there must be more than a reasonable probability that an injury will occur. *Reeves*, 731 So.2d at 213. 'Certain' has been defined as "inevitable" or "incapable of failing." *Jasmin v. HNV Cent. Riverfront Corp.*, 642 So.2d 311, 312 (La. App. 4 Cir. 1994). An employer's knowledge that a job might be dangerous and that there is a high probability that someone could be injured does not meet the threshold of "substantially certain." *Reeves*, 731 So.2d at 213. Furthermore, neither an employer's knowledge and appreciation of a risk nor their reckless and wanton conduct constitutes intentional wrongdoing for the purposes of the LWCA. *Id.* To put it another way, an employer is not liable under the intentional act exception when they simply have knowledge of prior injuries in that line of work, or are aware of statistical data regarding those injuries. *Maddie v. Plastic Supply & Fabrication, Inc.*, 434 So.2d 158, 161 (La. App. 5 Cir. 1983), writ denied, 435 So.2d 445 (La. 1983).

In addition to providing employees with an exclusive remedy against their employers, the LWCA also establishes an employer's obligation to their employees. One such obligation is to provide medical care for an employee who contracts an occupational disease. *Kelly v. CNA Ins. Co.*, 729 So.2d 1033, 1036 (La. 1999). An employer who discontinues payments arbitrarily, capriciously, or without probable cause is liable for penalties and attorney's fees. *Id.* The Louisiana Supreme Court created a narrow exception for a plaintiff's successors to sue in tort when an employee dies before he received a judicial determination that his employer was arbitrary and capricious in failing to pay medical expenses. *Weber v. State*, 635 So.2d 188 (La. 1994). This exception only applies when the employer acts intentionally and arbitrarily despite knowing that death is substantially certain to follow. *Id.* at 194. However, changes in the Workers Compensation procedure provide recourse for an employee whose employer refuses to pay medical benefits. *Kelly*, 729 So.2d at 1039. In instances where physical injuries are not life-threatening and an employer's denial of medical treatment does not result in death or significant worsening of a condition, an employee is limited to the recourses provided by the WCA. *Id.*

### c. Discussion

The Court must first determine whether summary judgement is a suitable way of resolving the issue at hand. Plaintiff argues that summary judgment is not an appropriate method of resolving questions of intent. (R. Doc. 94 at 6). However, Louisiana state courts routinely resolve whether plaintiffs have established a claim within the LWCA exclusivity provisions at the summary judgment stage. *See Lee v. State, ex rel. Dept. of Public Safety and Corrections*, 60 So. 3d 106, 110 (La. App. 3 2011) ("There is simply no question that a motion for summary judgment is an appropriate vehicle within which to raise the issue of the exclusive remedy provisions of the [L]WCA."); *see also Kelly v. CNA Ins. Co.*, 729 So. 2d 1033 (La. 1999) (affirming trial court's

7

grant of exception of no cause of action limiting plaintiff to LWCA remedies); *Carrier v. Grey Wolf Drilling Co.*, 776 So. 2d 439 (La. 2001); *Guillory v. Olin Corp.* 745 So. 2d 713 (La. App. 3 1999) (both finding summary judgment appropriate when plaintiffs failed to present evidence that employers committed an intentional act). Accordingly, the Court finds that summary judgment is an appropriate method of resolving whether the claim is limited to the LWCA exclusivity provisions.

All parties now acknowledge that Plaintiff was an employee of AFO at all material times. AFO contends that, as an employee, Plaintiff must seek recourse only through the LWCA. (R. Doc. 87-1). Plaintiff maintains that the intentional-act exception should apply, providing an avenue to sue in tort.

As previously discussed, for the intentional act exception to apply, AFO must have either "(1) consciously desire[d] the physical result of [their] act, whatever the likelihood of that result happening from [their] conduct; or (2) know[n] that the result is substantially certain to follow from [their] conduct, whatever [their] desire may be as to that result." *Bazley v. Tortorich*, 397 So.2d 475, 481 (La. 1981). In support of his contention that AFO desired to harm him, Plaintiff relies on a deposition taken January 3, 2017, in which Plaintiff suggests, without evidence, that the April 2014 hit was ordered by the commissioner. (R. Docs. 94 at 4-5; 94-2 at 5-6). Plaintiff seeks additional time to conduct discovery on the question of intent, and invokes Louisiana Code of Civil Procedure article 966 to justify this request. (R. Doc. 94 at 5-6).

This Court notes that Defendant based their Motion for Summary Judgment on the contention that Plaintiff failed to plead that his injuries were the result of an intentional act. (R. Doc. 87-1 at 6-7). Plaintiff subsequently sought, and was granted, an extension of time to file a response to that motion. (R. Doc. 91). Plaintiff fails to provide an explanation as to why the

8

extension was insufficient time to compile evidence as to AFO's intent. This Court finds that Plaintiff has had ample time to compile relevant evidence and has failed to provide any evidence of an intentional desire to harm Plaintiff beyond the unsubstantiated allegation that the commissioner may have intentionally directed a player to hit him. (R. Doc. 94 at 4-5). Under Louisiana law, this allegation is insufficient evidence that AFO consciously desired the physical result of its act.

Regarding whether Plaintiff's injuries were substantially certain to occur, Plaintiff's complaint sets forth a litany of literature regarding the connections between brain injury and repeated traumatic impact. (R. Doc. 44 at 2-6). Defendant maintains that they are not aware of any study that indicates any injury is substantially certain to follow from participating in a football game. (R. Doc. 87-1 at 8). This Court agrees. While it is undisputed that football is a dangerous sport that often causes harm to its participants, the connection between brain injury and football does not rise to the level of substantial certainty. Though this Court acknowledges that it is not uncommon for football players to experience brain injury, such injury is not 'inevitable' as is required to meet the exception to the LWCA.

Finally, the Court is unable to resolve Plaintiff's allegations that AFO failed to pay medical costs. Defendants allege that Plaintiff, through his union representatives, resolved his injury and medical grievances. (R. Doc. 98 at 6-7). Although Defendants did attach an agreement of settlement purporting to settle grievances, the grievances that were deemed settled were listed in an attachment to this document that was not submitted to the Court. (R. Doc. 87-6). As such, the Court is unable to determine if Plaintiff's injury and medical grievances have been resolved.

## IV.     CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Defendant Arena Football One, LLC's motion for partial summary judgment, R. Doc. 87, is **GRANTED**.

New Orleans, Louisiana, this 10th day of May, 2017.

                                                UNITED STATES DISTRICT JUDGE